# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JAMES LEWIS DeROSA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-05-324-FHS |
| | ) | |
| JUSTIN JONES, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the court for its consideration is the Defendant's Motion for Summary Judgment. The court rules as follows on the motion.

### STANDARD FOR SUMMARY JUDGMENT

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c) See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact. Celotex v. Catrett, 477 U.S. 317, 325 (1986). If this initial burden is satisfied, the nonmoving party then has the burden of coming forward with specific facts showing there is a genuine issue for trial as to elements essential to the nonmoving party's case. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party cannot rest on the mere allegations of the

1

pleadings, but must go beyond the pleadings and "set forth specific facts showing there was a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof." Applied Genetics v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990).

"A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thomas v. IBM, 48 F.3d 478, 486 (10th Cir. 1995) (quoting Anderson, 477 U.S. at 248). In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. Deepwater Invs. Ltd. v. Jackson Hole Ski Corp, 938 F.2d 1105, 1110 (10th Cir. 1991). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. With these standards in mind, the court turns to the merits of the defendants' motion.

Plaintiff filed his Complaint in this court on August 8, 2005, this same date, plaintiff filed a Motion to Proceed In Forma Pauperis. On September 13, 2005, an order was entered granting the Motion to Proceed In Forma Pauperis. On April 13, 2006, plaintiff filed an amended petition. On April 19, 2006, plaintiff filed another amended petition. On April 19, 2006, the amended petition filed on this date was stricken. On June 5, 2006, defendant filed a Motion To Stay Proceedings and a Request For An Order For Special Report. On June 6, 2006, an order was entered requiring a special report. The special report was filed on September 25, 2006. On this same date, defendant filed a

Motion to Dismiss. On November 22, 2006, plaintiff filed an objection to defendants' motion. On February 2, 2007, this court entered an order denying said motion to dismiss. On March 30, 2007, defendant filed this motion for summary judgment. On June 1, 2007, plaintiff filed a response to the motion. On June 25, 2007, the defendant filed a reply to plaintiff's response.

Plaintiff appears *pro se* in this action and is an inmate in the custody of the Oklahoma Department of Corrections ("DOC"). Plaintiff is currently incarcerated in McAlester, Oklahoma.

In his amended complaint, plaintiff alleges that defendant is denying him his free exercise of religion as guaranteed by the First Amendment to the United States Constitution by failing to provide him with kosher meals. In his amended complaint, plaintiff seeks prospective injunctive relief only. He requests to be provided with a diet that meets the dietary requirements of his Messianic Jewish faith, while maintaining the nutritional value standards set by the A.C.A. Plaintiff requests a kosher diet be provided "for the duration of my incarceration, at no cost to me."

The court finds the facts as follows. Plaintiff has been incarcerated at the Oklahoma State Penitentiary since December 12, 2001. Upon entering the Department of Corrections system in 2001, plaintiff listed his religion as "Church of Christ". On November 22, 2004, plaintiff filed a Request to Staff to OSP Chaplain Franzese requesting he receive a "sack lunch" or regular meal instead of the special meal served on Christmas. Chaplain Franzese contacted Earl Walters, asking for assistance regarding the appropriateness of the Christmas meal. Earl Walters is the pastor of the Mayim Hyim Beit Midrash Living Water House of Study

3

located in Tulsa, Oklahoma. The Mayim Hyim Beit Midrash is a Messianic congregation that believes in Yahshua (Jesus) and has as members both Jews and Gentiles (non-Jews). In response, Walters stated that as long as the meal did not include pork or other non-scriptural foods, or include any Christmas candy or holiday decorations, the meal would be acceptable.

On May 23, 2005, plaintiff submitted a request to staff to OSP Chaplain Franzese requesting the Chaplain "make arrangements with OSP for kosher meals to be served." OSP Chaplain Franzese responded to plaintiff that "per policy OP-030112, the DOC provides two (2) types of diets for religious reasons: (1) non-pork and (2) vegetarian." OSP Chaplain Franzese informed plaintiff he could request to be placed on a vegetarian diet, and attached a "Waiver" for plaintiff to receive a vegetarian diet due to religious reasons. Prior to responding to the Request to Staff, OSP Chaplain Franzese contacted Earl Walters by email to investigate plaintiff's request, and inquire if Messianic Jews do in fact follow a very strict Kosher diet. Mr. Walters responded that Messianics do not follow many of the traditional preparation rules established by the rabbinic system. He stated that in general they eat no pork, shellfish, fish without scales, or game such as squirrel or rabbit.

On May 26, 2005, plaintiff filed grievance #05-189 requesting that OSP Warden Mullin "Make arrangements for those classified within the Jewish faith (Judaism) to be served Kosher meals that are approved by the Jewish community." On May 31, 2005, acting Warden Standifird responded to plaintiff's grievance by informing him that "per OP-030112 the DOC provides (2) modified diets: non-pork and vegetarian. You may request the diet that meets your religious needs." Plaintiff appealed the

4

denial of grievance #05-189 to the Administrative Review Authority. On June 14, 2005, the Administrative Review Authority affirmed the response of facility head and denied plaintiff relief. At the time plaintiff filed the May 23, 2005, Request to Staff and May 26, 2005, grievance #05-189, the DOC policy in place on religious diets, entitled "Religious Programs", OP-030112 Section, VI, effective December 29, 2004, stated the following: "All religious restricted meals will be offered through a common pork-free or meat free meal. No religious test will be applied for religious meals. An inmate desiring to change his food selection due to his religion must have given the facility at least ten (10) days notice of the particular faith requiring this meal."

Effective July 7, 2005, DOC policy on religious diets, entitled "Religious Programs", OP-030112, was amended to incorporated Addendum-01. Addendum-01 states that "all tenants of an inmate's faith practice that requires accommodations by the department must be supported and verified by the faith's recognized sacred text, historically established procedures and outside religious authorities."

Effective December 5, 2005, DOC policy on religious diets, entitled "Religious Programs", OP-030112, was amended to incorporate Addendum-02 which provides "all religious restricted meals will be offered through a common pork-free or meat-free meal or kosher diet. The kosher diet will be provided only to those inmates that demonstrate their religious faith mandates compliance with a kosher diet. An inmate who wishes to receive one of these diets for religious reasons must submit a 'Religious Diet Request Form' to the Facility Chaplain."

The "Religious Diet Request Form" requires that "Requests must be verified by religious officials from the specified faith group. Religious officials must verify that the inmate meets the requirements of the faith group to be recognized as a member and that the faith group requires a special religious diet."

On March 27, 2006, plaintiff submitted the "Religious Diet Request Form" to OSP Chaplain Franzese, listing his religion as Messianic Judaism and requesting a kosher diet. On April 10, 2006, Chaplain Franzese denied plaintiff's request, stating that "the above referenced religious body does not follow many of the traditional preparation rules established by the rabbinic system. They do not follow a very strict 'kosher' diet."

On April 11, 2006, plaintiff submitted a second "Religious Diet Request Form" to OSP Chaplain Franzese again requesting a kosher diet. Chaplain Franzese responded by referring plaintiff to his response to his previous request dated April 10, 2006.

Effective April 4, 2006, DOC policy OP-030112 entitled "Religious Services" was implemented in the place of OP-030112 entitled "Religious Programs" which had an effective date of December 29, 2004. DOC OP-030112 entitled "Religious Services" has an effective date of April 19, 2006, and is current DOC policy. Current DOC policy provides that "the kosher diet will be provided to inmates who demonstrate their religious faith mandates compliance with a kosher diet. The agency religious services coordinator will maintain a list of religions that mandate a kosher diet. That list will be made available to staff. Appropriate facility staff will be notified whenever that list is updated."

As of April 19, 2006, only two faith groups are approved for a kosher diet. The religious groups approved for a kosher diet are Jewish and House of Yahweh. The Messianic faith is not approved for a kosher diet. On February 23, 2003, plaintiff filled out an "OPS Religious Information Form" indicating his desire to change his religious preferences from "Christian" to "Messianic Judaism." Information provided by plaintiff states that Messianics are "not concerned with the separation of meat and dairy, maintaining separate dishes for certain meals/foods items or having a rabbinic blessing said over the food." Further, plaintiff's information states that Messianics "are concerned with the proper slaughter in which the blood is drained from the carcass and during preparation not mixing food with non-food items such as pork and many seafood products. DOC policy requires that all diets served to inmates will meet or exceed the standards of the state health department or exceed the recommended dietary allowance of the National Academy of Science. All diets will be nutritionally and properly prepared. Kosher meals are provided to DOC inmates through frozen entrees purchased from Sysco Foods. The frozen kosher entrees comply with the strict rabbinic requirements mandated for Orthodox Jewish inmates. These strict requirements dictate specific methods by which allowable foods are prepared for consumption. The average cost of the kosher meals range from $6.75 per meal to $10.10 per meal. From July 1, 2006, through February 28, 2007, OSP fed the average inmate at a cost of approximately $2.40 per day.

## I. First Amendment Claim

Plaintiff claims that defendant Jones violated his civil rights under the fee exercise clause of the First Amendment by

failing to provide him a kosher diet. Plaintiff alleges that he is a "sincere practitioner of Messianic Judaism" because he attends services, participates in Jewish holidays and contributes financially and possess Jewish literature. Plaintiff asserts that he must adhere to a Jewish dietary law and requests the OSP to provide him with kosher meals. In support of his claim plaintiff cites to the case of <u>Beerheide v. Suthers</u>, 286 F.3d 1179 (10th Cir. 2002) and the consolidated Oklahoma cases of <u>Fulbright v. Jones</u>, CIV-03-99-W, <u>Cottriel v. Jones</u>, 03-125-W and <u>Harmon v. Jones</u>, CIV-03-1465. However, the cases to which plaintiff cites all involved Orthodox Jewish inmates. Plaintiff is a Gentile or non-Jew and he fails to demonstrate a strict rabbinic kosher diet is mandated by the Messianic faith. This court finds that plaintiff's First Amendment claim fails because he fails to establish that the OSP regulations regarding religious diets puts a substantial burden on his religious freedom. <u>San Jose Christian College v. City of Morgan Hill</u>, 360 F.3d 1024, 103 (9th Cir. 2004). DOC Policy OP-030112 states that the kosher diet will be provided "only to inmates who demonstrate their religious faith mandates compliance with a kosher diet." The evidence presented by plaintiff demonstrates Messianic Judaism does not mandate strict compliance with a kosher diet. In support of his claim plaintiff presented a letter from Messianic congregation leader Earl Walters which states that Messianics "are not concerned with the separation of meat and dairy, maintaining separate dishes for certain meals/food items or having a rabbinic blessing said over the food." Further, the Messianics are concerned with "proper slaughter in which the blood is drained from the carcass" and "not mixing food with non-food items such as pork." A kosher diet requires the complete separation of meat and dairy products. Kosher meals require separate utensils, dishes, and cooking equipment for dairy and

meat dishes.  According to the documents submitted by plaintiff, he is not mandated or required to follow the basic kosher requirements of not mixing meat and dairy.  Thus, it appears the Messianic faith does not adhere to a strict kosher diet.

The evidence reveals that plaintiff asserts membership in a group called the "Seed of Abraham" and he presents an Affidavit from Avram Yehoshua the shepherd of the group.  On the Seed of Abraham website an article posted thereon states that they find no documentation for the belief concerning not mixing meat and dairy.  Instead, plaintiff is concerned with the way in which the animal is slaughtered.  Plaintiff's dietary prohibitions are 1) meat that has not been slaughtered in a specific manner; and 2) mixing pork and non-pork items.  OSP contacted Mr. Walters to determine if a kosher diet is a central tenet of Messianic Judaism. Mr. Walters stated the Messianic Judaism does not follow a strict kosher diet.  OSP was unable to find any support for plaintiff's contention that a kosher diet is a tenet of plaintiff's religion.  Plaintiff has wholly failed to establish that the vegetarian diet which is offered to him by OSP would not appropriately accommodate his religious needs.  The only objection plaintiff has to the vegetarian diet is that it is incomplete and does not provide enough nutrition.  The vegetarian diet provided by DOC meets or exceeds the standards of the state health department or exceeds the recommended dietary allowance of the National Academy of Science.  In his response to the motion for summary judgment plaintiff alleges that his form of Judaism is concerned with how food is prepared.  He argues the reason the vegetarian diet will not satisfy his religious requirements is that there is no way to determine if the food was prepared to kosher standards.  However, plaintiff has provided no proof for this assertion other than his conclusory statements.  The

9

evidence he has submitted does not establish that his form of Judaism must adhere to a kosher diet. The court has found nothing in the record which proves that a kosher diet is a fundamental tenet of Messianic Judaism. Thus, plaintiff has failed to establish that defendant's failure to serve him a kosher diet is a substantial burden on his freedom of religious practice.

Further, the defendant's policy of providing kosher meals to a select group of religious groups is related to legitimate penological interests. After applying the test set forth in Turner v. Safley, 482 U.S. 78 (1987) the court finds the regulations regarding kosher meals is reasonable. First, defendant's decision related to the denial of a kosher meal for plaintiff is related to the legitimate penological interest of operating a prison within budgetary constraints. The evidence revealed the kosher meal was substantially more that the other options provided to plaintiff. Second, the defendant offered plaintiff an alternative means of expressing his religious beliefs. In the instant case, defendants offered inmates a vegetarian meal as well as a non-pork meal to enable him to express his religious beliefs. See Dehart v. Horn, 227 F.3d 47, 57 (3rd Cir. 2000)(holding "If the prison does afford the inmate alternative means of expressing his religious beliefs, that fact tends to support the conclusion that the regulation at issue is reasonable.") Third, the court must look at the specific religious practice at issue and determine how accommodating plaintiff would impact guards and other inmates. In the case at bar, the facts reveal that plaintiff is requesting a special meal not mandated by his religion. The court finds that this could present difficult circumstances for the guards because it could cause inmate perceptions that plaintiff was being treated differently or being given preferential treatment. Finally, the

court must look at the absence of ready alternatives. Plaintiff has failed to provide any alternatives. The evidence reveals that defendant has ready provided alternatives available for plaintiff. He has the option of a vegetarian or non-pork meal. Thus, the Turner factors weigh in favor of the defendant.

Accordingly, the defendant's Motion For Summary Judgment is hereby **GRANTED** and all other motions currently pending are hereby deemed **MOOT**.

**IT IS SO ORDERED** this 16th day of July, 2007.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma